

NEW YORK
1010 Avenue of the Americas
New York, New York 10018
Telephone (212) 213-8844
Facsimile (212) 213-3318

NEW JERSEY
51 JFK Parkway
Short Hills, New Jersey 07078
Telephone (973) 379-0038
Facsimile (973) 379-0048

WWW.ALLYNFORTUNA.COM

October 24, 2019

**VIA ECF**
Honorable Lorna G. Schofield
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:   **Cin v. 34th Street Camera & Computers, Inc., et al.**
            **19-CV-2919 (LGS)**

Dear Judge Schofield,

    Our firm represents Plaintiff, Charles Grynszpan Cin ("Cin"), in the above-referenced action.

    Together with Joel Spivak of The Law Firm of Joel Spivak, counsel for the Defendants, 34th Street Camera & Computers Inc. ("34th Street Camera"), Digital Electronics House, Inc. ("Digital"), Multy Electronics Inc. ("Multy"), and Yogesh Shandilay ("Shandilay") (collectively referred to as "Defendants"), we submit this letter for approval of the settlement reached in the instant Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199, 206 (2d Cir. 2015). A copy of the Settlement Agreement signed by all parties is annexed hereto as **Exhibit "A."**

    In accordance with this court's order dated September 23, 2019, this letter motion will address the factors established in *Wolinsky v. Scholastic*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012, to show that the settlement reached is "fair and reasonable." These factors include a discussion of (1) the plaintiff's range of possible recovery; (2) the extent to which "the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses"; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the produce of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion."

    I.    **Background and Claims**

    Plaintiff commenced this action on April 2, 2019 alleging claims against Defendants to recover unpaid minimum wage and overtime wages under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL"),

1

spread of hours pay for days in which he worked longer than 10 hours/day, statutory penalties under New York State Department of Labor Regulations and NYLL § 195 (3) and § 195 (1) for failure to provide wage notice forms and weekly wage statement. Defendants served an Answer to the Complaint on May 31, 2019, disputing the Plaintiff's claims, both as to the alleged hours Plaintiff claims to have worked and the underpayments, as well as the alleged wage notice and wage statement violations. In addition, Defendants assert that Plaintiff was the Manager of the store and was an exempt employee under either, the executive and administrative exemptions.

## II.    The Settlement Reached Between the Parties

Since the filing of the Complaint, the Parties exchanged paper discovery and engaged in arm's length settlement discussions, which included a mediation session before Patrick McKenna at the S.D.N.Y. Mediation offices on September 11, 2019. While a settlement was not reached during mediation, additional records were exchanged which allowed the Parties to fully assess their claims and defenses in this action. Counsel for the parties continued negotiating and a settlement was reached in the monetary amount of $120,000.00, of which Plaintiff will receive $78,000.00, and Plaintiff's counsel will receive $42,000.00, in attorney's fees and costs.

### A. Range of Possible Recovery

There is a dispute between the parties as to the hours Plaintiff worked each week. There is also a dispute regarding the actual amount of wages paid to the Plaintiff. Plaintiff contends he was paid $550 a week. Defendants, however, contend that throughout the course of his employment, Plaintiff was paid additional weekly compensation, in varying amounts, which increased his weekly wages to $700 to $1,000.00 week. While Plaintiff acknowledges that, at times, he received additional compensation from Defendants in the form of bonuses he disputes the bonuses were in the amounts claimed by Defendants. Neither party has contemporaneous records to support their respective contentions as to the hours worked or wages paid/received. If a factfinder were to ultimately side with Defendants on this issue, Plaintiff's lost wage damages would be significantly reduced. Furthermore, Defendants also contend that for a majority of Plaintiff's employment with Defendants, he held a managerial role and claim that he is an exempt employee not entitled to overtime pay. It is submitted that there are a number of factual and legal disputes between the parties which could ultimately impact the amount of Plaintiff's recovery if this case were to proceed to dispositive motion practice or trial

For settlement purposes, Defendants did not pursue the exemption defense but the issue of how damages should be calculated became critical. Plaintiff argued during settlement negotiations that the salary paid by the Defendants only covered the first forty hours worked and the rest of his time was unpaid at the full overtime rate. *See, Berrios v. Nicholas Zito Racing Stable, Inc.*, 849 F. Supp. 2d 372, 385 (E.D.N.Y. 2012) ("[t]here is a rebuttable presumption that an employer's payment of a weekly salary represents compensation for the first 40 hours of an employee's workweek; the burden is on the *employer* to rebut this presumption with evidence that the employer and employee had an agreement that the employee's weekly compensation would cover a different number of hours"); *See, also Giles v. City of New York*, 41 F. Supp 2d. 308, 317 (S.D.N.Y 1999). Plaintiff also pointed out that "courts have made clear that unless the contracting parties intend and understand the weekly salary to include overtime hours at the premium rate, courts do

2

not deem weekly salaries to include the overtime premium for workers regularly logging overtime, but instead hold that the weekly salary covers only the first 40 hours." *Berrios*, 849 F. Supp. 2d at 385. Such an agreement cannot be inferred, as there must be evidence that the plaintiff understands that his weekly wages included a premium for time and one half for the hours worked over forty. *Id.* at 387.

Defendants countered that in situations such as this case, where there is no written agreement, Courts have inferred the terms of the parties' agreement from their entire course of conduct, and that under the FLSA and NYLL, it is possible for the employer to rebut such a presumption by "showing an employer-employee agreement that the salary cover a different number of hours." *Giles* at 316-17; *Cocoletzi v Fat Sal's Pizza II, Corp.*, 2019 WL 92456, at *6 (S.D.N.Y. Jan. 3, 2019], report and recommendation adopted (Jan. 3, 2019) citing *Pinovi v. FDD Enterprises, Inc.*, 2015 WL 4126872, at *4 (S.D.N.Y. July 8, 2015); *Pastor v. Alice Cleaners, Inc.*, 2017 WL 5625556, at *2 (S.D.N.Y. Nov. 21, 2017). "[T]he employer can rebut the presumption by showing an employer-employee agreement that the salary cover a different number of hours." *Doo Nam Yang v. ACBL Corp*, 427 F. Supp. 2d 327, 335, 338 (S.D.N.Y. 2005) (finding that the weekly salary paid to plaintiff covered 50 hours of straight-time pay per week, and not the presumed 40 hour workweek.) Defendants also argued that the Parties' dealings reflected an understanding that wages paid to Plaintiff were intended to cover both straight-time and an overtime premium for hours worked over 40/hours.

In light of the foregoing uncertainties, and for purposes of settlement only, Plaintiff recalculated his damages to give Defendant credit for a portion of the additional compensation he received, increasing his weekly wages to $750.00. However, Plaintiff maintained that Defendant did not sufficiently show that such payments included an overtime premium. Plaintiff gave Defendants credit for straight-time pay for all his overtime hours. A spreadsheet showing a compromised computation of the value of the Plaintiff's claims is annexed hereto as **Exhibit "B"**.

For settlement purposes only, under the revised methodology for calculating damages, Plaintiff was paid above minimum wage for all hours worked between May 1, 2014 through December 31, 2016. Plaintiff's claim for minimum wage underpayment and spread of hours claim is limited to the period of January 2017 through March 2019, totaling $9,097.60 (minimum wage underpayment) and $7,668.00 (spread of hours underpayment). Plaintiff's overtime claim covers the full extent of his employment with Defendants, totaling $54,695.20. As a result, Plaintiff is owed $71,460.80 in unpaid wages, $71,460.80 in liquidated damages, and $10,000 in record keeping claims. Therefore, with this settlement of $120,000.00, the Plaintiff is recovering **78%** of the full value of his claim, **100%** of his unpaid wages and statutory damages and **68%** of his liquidated damages.

Plaintiff believes that the $120,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting both parties to the time and expense of more extensive discovery and ongoing litigation. The settlement reached by the parties reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. While Plaintiff was confident that he would be able to challenge the Defendants' defenses successfully at trial, the Parties believe that the certainty of settlement is better than the uncertain outcome of protracted litigation. Moreover, Plaintiff prefers to receive

his proceeds without the inevitable delay and risks associated with continued litigation, and the possibility of recovering an uncollectible judgment.

### B. Anticipated Burdens and Expense of Continued Litigation

As stated above, Defendants asserted several defenses to Plaintiff's claims including that Plaintiff was a Manager and exempt under either the administrative and/or executive exemptions. While the issues of whether Defendants could meet their burden of establishing that Plaintiff was paid the salary threshold necessary to qualify for the exemption (based on the additional compensation allegedly paid by Defendants) and that his primary duties satisfied the requirements under the exemptions were wholly disputed by Plaintiff, litigation of these issues is extremely fact intensive and would have required extensive discovery including, numerous depositions of Plaintiff's co-workers to assess Plaintiff's duties while employed by Defendants. In addition, an early settlement avoids a protracted litigation, motion practice and trial resulting in significant legal fees on both sides.

### C. Litigation Risks Faced by the Parties

The parties believe that the settlement reached in this case, at this early stage, guarantees Plaintiff substantial recovery for unpaid wages and avoids the risks inherent in litigation. These risks are especially high in situations like this, where neither Plaintiff nor Defendants have complete wage and hour records to establish the hours each side claims were worked by Plaintiff or the wages paid to Plaintiff. Herein, Defendants are also disputing liability in this action, claiming that Plaintiff was an exempt employee and produced some documentation during discovery and at the mediation that arguably supported their claim. If Defendants prevailed in establishing their exemption claim, Plaintiff's claims would be eliminated. If Defendants prevailed in establishing the hours they claim Plaintiff worked, and the additional compensation they allegedly paid him, Plaintiff's unpaid wages claim would be significantly diminished. The early settlement avoids this litigation risk and ensures a significant recovery for Plaintiff.

### D. Arm's-Length Negotiations

A "presumption of fairness, adequacy and reasonableness may attach to a...settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in initial discovery and participated in arm's length settlement discussions in order to arrive at this settlement, which included a mediation before an impartial arbiter. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length settlement process, it should be granted judicial approval.

### E. Possibility of Fraud or Collusion

This settlement was reached after intensive negotiations between experienced counsel who advised their respective clients on the benefits and risks of continued litigation. The settlement negotiations began with the assistance of a mediator from the Court's Mediation Panel, Mr. Patrick

4

McKenna. Even though the parties did not reach a settlement during the mediation, it laid the groundwork for further settlement discussions, with significant input from the respective parties, resulting in the settlement of $120,000.00. Moreover, it is important to note that Plaintiff stopped working for the Defendants before this litigation commenced, so there was no opportunity for fraud or collusion between the adverse parties.

## III.    Additional Settlement Terms

### (i) Mutual General Release Clause

The Settlement Agreement's mutual general release clause, according to which Plaintiff and Defendants are reciprocally released from all claims against each other, is fair and reasonable since it is drafted to mutually benefit both parties and Plaintiff had stopped working for Defendants prior to instituting this action. *Souza v. 65 St. Marks Bistro*, No., 2015 WL 7271747, at *5 n.8 (S.D.N.Y. Nov. 6, 2015) ("A mutual release will also ensure that an employer is not simply leveraging 'a release from liability unconnected to the FLSA,' but that any claim that the employer might have against the plaintiff (such as theft or destruction of property, in the case of a restaurant worker) would also be released.") (quoting *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–52 (M.D. Fla. 2010).

### (ii) Non-disparagement Clause

The Settlement Agreement has a mutual non-disparagement clause which benefits both Plaintiff and Defendants equally. Non-disparagement is defined as "publicly making insulting or calumnious statements" against the other party in accordance with *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 180 (S.D.N.Y. 2015). The non-disparagement clause also contains a carve-out for truthful statements about the other party, further supporting a finding that its inclusions is fair and reasonable. *See Zhi Li Zhong v Rockledge Bus Tour Inc.*, 2018 Wage & Hour Cas 2d (BNA) 279308 (S.D.N.Y. Aug. 6, 2018.*Santos v. El Tepeyac Butcher Shop Inc.*, No. 15-CV-814 (RA), 2015 WL 9077172, at *1 (S.D.N.Y. Dec. 15, 2015). In addition, this provision is beneficial to both parties in that Plaintiff's current employment working as a representative/salesperson for an electronics distribution company in the New York metro area could result in overlap of business acquaintances between Plaintiff and Defendants.

## IV.    Attorney's Fees

Pursuant to the settlement agreement, Plaintiffs' counsel will receive 35% of the recovery in this litigation ($42,000.00) as attorneys' fees and costs. According to the retainer agreement, Plaintiff's counsel is to receive the following:

(i)    thirty-five percent (35%) of the total gross value of the settlement in your favor ... if a settlement occurs at any point from today through the date on which you file a lawsuit;

(ii)   thirty-five percent (35%) of the total gross value of a settlement or judgment in your favor ... through any ruling by a court on a motion for summary judgment;

> (iii) forty percent (40%) of the total gross value of a settlement or judgment in your favor ....if such a settlement or judgment occurs after the decision on summary judgment is rendered, while the Firm prepares for trial, during or after trial, or while the Matter is on appeal or as a result of such appeal ( the "Contingency Fee").

While the 35% contingency fee sought herein is slightly higher than the one-third sought in most FLSA cases, such fees have been deemed reasonable and approved by courts where, as here, it includes counsel's out-of-pocket costs such as filing fee for the complaint, copying costs, and research. *See Garcia v YSH Green Corp.*, 16 CIV. 532 (HBP), 2016 WL 6779630, at *3 (S.D.N.Y Nov. 14, 2016). Further, the attorney's fees herein are consistent with contingency fee agreements that the Second Circuit commonly approves in FLSA cases. *See Najera v. Royal Bedding Company, LLC,* 2015 WL 3540719 (E.D.N.Y. June 3, 2015); *See also Rangel v. Grand St. Meat & Produce Corp.,* 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013). Contingent fee agreements in wage and hour cases favor public policy and are "meant to encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel." *Sand v. Greenberg,* 2010 WL 69359 at *3 (S.D.N.Y. 2010).

In support of the requested fee, Plaintiff's counsel submits the billing records for this matter annexed hereto as Exhibit "C." As shown therein, the fees recovered under a contingency fee basis are commensurate with the hours billed and applicable billing rate. The majority of the work in this case was performed by myself and my partner, Paula Lopez.

I am a managing partner and founder of Allyn & Fortuna LLP and have over 30 years of litigation experience. I graduated from Touro Law School in 1986. I worked as a staff attorney at The Legal Aid Society, Criminal Defense Division from 1986-1990. I started this firm in 1990.

I concentrate in complex employment and corporate litigation. I primarily represent employers and less often, employees in employment litigation. My clients include national retail chains, Fortune 500 companies in various industries, such as manufacturing, food service, financial, and pharmaceuticals. I have litigated and tried numerous cases before juries and judges in federal and state courts, argued numerous cases in federal and state appellate courts, and handled matters before administrative tribunals and federal, state, and municipal regulatory agencies. I have performed extensive work in employment litigation, representing both the employer and employee, which I believe enables me to better assess the strengths and weaknesses of a case from a plaintiff's and defendant's perspective. I am admitted to practice in the courts of New York and New Jersey. I have worked as lead counsel on a vast number of employment cases before federal and state courts, as well as, federal and state agencies including EEOC, OSHA, the New York State Division of Human Rights and the New York City Commission of Human Rights.

Paula Lopez graduated from Tulane Law School in 2003 and was admitted to the bar in the State of New Jersey in 2003, in the State of New York in 2004, and federal courts for the district of New Jersey, Southern District of New York, Eastern District of New York, Second Circuit Court of Appeal and Third Circuit Court of Appeals. Ms. Lopez has extensive litigation experience and began litigating employment law cases in 2009. Currently, fifty percent (50%) of Ms. Lopez's case load concentrates on employment law matters, including wage and hour, retaliation and

discrimination matters in New York federal and state courts. Ms. Lopez has successfully represented clients in employment cases before federal and state courts, as well as, federal and state agencies including EEOC and the New York State Division of Human Rights.

As stated in the retainer agreement, my firm's hourly rate for partners is $ 550.00/hour, for associates is $ 375.00/hour, and paralegal time is $ 85.00/hour. Our partner rate of $550 per hour is a bit higher than what has been approved by this court in similar cases when calculating attorneys' fees based on the lodestar method. Nevertheless, used as a cross-check, it can be seen that the contingency fee arrangement in this case is reasonable. Plaintiff's counsel's time litigating this action exceeds 70.70 hours, making the total amount of attorneys' fees and costs equal to $38,866.01 (such amount does not include the attorney's fees incurred in making this application). See Exhibit "C."

The Courts routinely utilize the lodestar method when approving attorney's fees under a contingency agreement. *See Sakiko Fujiwara v. Sushi Yasuda Ltd.*, 58 F.Supp.3d 424 (S.D.N.Y. 2014). When applying the lodestar method as a "cross-check" courts have recognized that "the lodestar remains useful as a baseline even if the percentage method is eventually chosen. Indeed, we encourage the practice of requiring documentation of hours as a "cross-check" on the reasonableness of the requested percentage…(citation omitted) where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court." *See Goldberger v. Integrated Resources, Inc.*, 209 F. 3d 43, 50 (2d Cir. 2000).

It is respectfully submitted that Plaintiff's counsel's litigation background and experience and our success in litigating this particular case warrant the attorney's fees sought herein. *See Guallpa v. N.Y. Pro Signs Inc.*, No. 11 CIV. 3133 LGS FM, 2014 WL 2200393 (S.D.N.Y. May 27, 2014)(awarding $350-$600 per hour for experienced FLSA attorneys in default action); *Sakiko Fujiwara*, 58 F. Supp. 3d 424, 437 ("Courts in this District have determined in recent cases that a fee ranging from $250 to $450 is appropriate for experienced litigators in wage-and-hour cases.").

Here, the fee amount of $ 42,000.00 is only slightly greater than the lodestar amount of $38,087.50. The proposed allocation represents a lodestar multiplier of 1.1. Although the lodestar multiplier is determinative only for a common fund settlement, courts have considered it in individual settlements, and here it is in line with settlements approved in other cases. *See, e.g., Fujiwara*, 58 F. Supp. 3d. at 439 (awarding fee that represented 2.28 multiplier of modified lodestar calculation and noting that "multiplier near 2 compensates [Plaintiff's counsel] appropriately"). One of the purposes of applying a multiplier is to take into account the contingent nature of the fee and the risks of non-payment. Here, the multiplier requested is approximately 1.1 which is well within the range granted by courts in this circuit.

As such, Plaintiffs' counsel believes that the contingency fee in this case is fair and reasonable.

7

## V.   Conclusion

For the reasons set forth above the Parties jointly request that the Court approve the parties' settlement as reflected in the annexed Settlement Agreement and the amount apportioned as attorneys' fees.

Respectfully Submitted,

ALLYN & FORTUNA LLP

By:   Nicholas Fortuna, Esq.
Attorneys for Plaintiff
1010 Avenue of the Americas, 3rd Flr
New York, New York 10018
(212) 213-8844
